# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAUREEN AHEARN, | CIVIL ACTION |
| Plaintiffs, | |
| v. | NO. 19-3012 |
| BJ'S WHOLESALE CLUB, INC., | |
| Defendant. | |

**Goldberg, J.**  March 18, 2020

## MEMORANDUM

Plaintiff Maureen Ahearn filed this slip-and-fall case against Defendants BJ's Wholesale Club ("BJ's") and BJ's store manager Sean Breslin (collectively, "Defendants") in the Philadelphia Court of Common Pleas. Defendants removed the case to federal court, arguing that Breslin was fraudulently joined and, thus, the requirements for federal diversity jurisdiction were satisfied. Although Plaintiff did not move for remand, Defendants filed a Motion to Dismiss the claims against Breslin and concurrently sought a finding of fraudulent joinder. Cognizant of my independent duty to ensure that I have subject-matter jurisdiction over this case, I will deny the Motion to Dismiss and remand the case to Philadelphia County.

## I. FACTUAL BACKGROUND

According to the Complaint, Plaintiff, a Pennsylvania citizen, was in a BJ's Wholesale Club in Oaks, Pennsylvania, on March 16, 2019, when she slipped and fell on "an area covered with a slippery liquid—crushed food product and/or other defects causing a danger, menace, nuisance, trap and/or hazard to persons lawfully upon the aforesaid premises." As a result of her fall, Plaintiff alleges that she suffered various severe and permanent injuries. (Compl. ¶¶ 2, 6, 11.)

Plaintiff filed suit on June 7, 2019, claiming negligence against both BJ's, a Delaware corporation with its principal place of business in Massachusetts, and store manager Sean Breslin, a Pennsylvania citizen. (Compl. ¶¶ 1, 2, 4; Notice of Removal 3.) On July 10, 2019, Defendants removed the case to federal court, urging that Defendant Breslin had been fraudulently joined and that, without him, diversity jurisdiction existed under 28 U.S.C. § 1332.

On August 23, 2019, Defendants moved to dismiss all claims against Defendant Breslin under Federal Rule of Civil Procedure 12(b)(6) and sought a declaration that Breslin was fraudulently joined. Plaintiff failed to either seek remand or even to respond to the Motion. Thereafter, I held a telephone conference with the parties, directed Plaintiff to respond to the Motion, and provided Defendants leave to file a reply brief.

## II. STANDARD OF REVIEW

Fraudulent joinder is "an exception to the requirement that removal be predicated solely upon complete diversity." In re Briscoe, 448 F.3d 201, 215–16 (3d Cir. 2006). If the district court determines that the joinder was "fraudulent" in the sense that a defendant was named or joined solely to defeat diversity "the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" Id. at 216 (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)).

To demonstrate a defendant was fraudulently joined, the removing party may proceed under either an objective or subjective test. Under the objective test, the removing party must show "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted). A claim is colorable so long as it is not "wholly insubstantial and frivolous." Batoff v. State Farm Ins. Co., 977 F.2d 840, 852 (3d Cir. 1992). The district court conducting a fraudulent joinder analysis must

consider the complaint at the time the notice of removal was filed, accepting the factual allegations of the complaint as true and resolving any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. Id. at 851–52.

Under the subjective test, the removing party may establish that the plaintiff has "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Boyer, 913 F.2d at 111. To identify indicia of fraudulent joinder, a court can look to more than just the pleading allegations. Briscoe, 448 F.3d at 218; see also Boyer, 913 F.2d at 112 (allowing "limited piercing of the allegations [of the complaint] to discover fraudulent joinder").

The burden of persuasion on a defendant asserting fraudulent joinder is "heavy." Batoff, 977 F.2d at 851 (quotation marks and citation omitted). Removal statutes are to be strictly construed against removal and all doubts are resolved in favor of remand. Id.

## III. DISCUSSION

Defendants allege that Plaintiff's joinder of Defendant Breslin is fraudulent on two grounds. First, they posit that there is no reasonable basis in fact or colorable ground supporting the claim against him. Second, they urge that Plaintiff has no real intention in good faith to prosecute the action against him or to seek a joint judgment. I address each argument separately.

### A. Whether the Claim Against Defendant Breslin is Colorable

Defendants first contend that, under the "participation theory" of liability in Pennsylvania, there is no colorable legal claim of negligence against Defendant Breslin.

Analysis of this argument requires a review of Pennsylvania negligence law. Under Pennsylvania jurisprudence, a corporate employee may be liable for his own torts, even if he was acting within the scope of his employment at the time. Cosmas v. Bloomingdales Bros., Inc., 660 A.2d 83, 88–89 (Pa. Super. Ct. 1995). To sustain a negligence claim against an employee, a plaintiff must be able to establish the employee's culpability under the "participation theory" of individual

3

liability. Wicks v. Milzoco Builders, 470 A.2d 86, 90 (Pa. 1983). "Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts." Id. In other words, the officer or employee is not liable to third persons for a tort "unless he specifically directed the particular act to be done or participated, or cooperated therein." Id. at 90 (quoting 3A Fletcher, Cyclopedia of the Law of Private Corporations § 1137, 207).[1] Pennsylvania law distinguishes between negligence claims grounded upon an employee's "misfeasance," which are permissible, and claims asserting an employee's "mere nonfeasance," which are foreclosed. Id. "Misfeasance" is the improper performance of an act, as compared to "mere nonfeasance," which is the omission of an act which a person ought to do. Brindley v. Woodland Village Rest., 652 A.2d 865, 868 (Pa. Super. Ct. 1995).

Here, Defendants contend that the Complaint sets forth only allegations of nonfeasance against Defendant Breslin. Specifically, Defendants note that the Complaint avers that Breslin was negligent for: (a) failure to adequately train employees; (b) failure to institute appropriate policies to ensure the safety of customers; and (c) failure to adequately investigate the qualifications of employees. (Compl. ¶ 19.) According to Defendants, at no point does the Complaint plead that Breslin took part in the creation of the allegedly dangerous condition or that he committed any act of misfeasance. In turn, Defendants reason that because "Plaintiff has not pled any claims against Mr. Breslin which rise to the requisite level of actionable misfeasance under Pennsylvania law to support personal liability under the 'Participation Theory' . . . all such claims against Mr. Breslin must be dismissed under F.R.C.P. 12(b)(6)." (Defs.' Mem. Supp. Mot. to Dismiss 15.)

While Defendants' arguments may be appropriate for a Rule 12(b)(6) motion to dismiss analysis, that issue cannot be considered until I determine whether I have subject-matter jurisdiction

---

[1] Pennsylvania state and federal courts routinely apply this law to employees and other non-officer agents of a company. Aldorasi v. Crossroads Hospitality and Mgmt. Co., LLC, 344 F. Supp. 3d 814, 822 (E.D. Pa. 2018).

4

over this case. See 5B Wright and A. Miller, Federal Practice and Procedure § 1350, n.39 (2009). In order to discern whether jurisdiction exists, I must consider whether Defendants have met their more difficult burden of proving not just that the claims against Breslin are implausible under a 12(b)(6) standard, but that the claims are not "colorable" such that Breslin was "fraudulently joined" as a defendant. Only if Defendants prove fraudulent joinder may I disregard Breslin's citizenship and exercise diversity jurisdiction over this case.

A district court's analysis of a plaintiff's claims on fraudulent joinder analysis is less "searching" than on a motion to dismiss. See Batoff, 977 F.2d at 852. The relevant issue is the "legal possibility of the claim, not the merits." Spangenberg v. McNeilus Truck & Mfg, Inc., No. 18-4915, 2019 WL 1930062, at *4 (E.D. Pa. May 1, 2019). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Id. (quotation omitted); see also Lopez v. Home Depot, No. 08-1020, 2008 WL 2856393, at *3 (E.D. Pa. July 22, 2008) (quoting Batoff, 977 F.2d at 853)). The court "must . . . resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Briscoe, 448 F.3d at 217. "Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant." West v. Marriott Hotel Servs., Inc., No. 10-4130, 2010 WL 4343540, at *3 (E.D. Pa. Nov. 2, 2010).

Courts applying Pennsylvania law have repeatedly recognized that "negligence claims against a store manager relating to a slip-and-fall incident are colorable under Pennsylvania law." Rubino v. Genuardi's, Inc., No. 10-6078, 2011 WL 344081, at *4 (E.D. Pa. Jan. 31, 2011) (citations omitted); see, e.g., Suter v. Speedway, LLC, No. 19-1222, 2019 WL 5622454, *3 (M.D. Pa. Oct. 31, 2019) (declining to find fraudulent joinder of store manager in slip-and-fall case where complaint generally pled that manager participated in creating the dangerous condition); Camilli v. Wal-Mart Stores, Inc.,

No. 18-2849, 2019 WL 1432481, at *5 (E.D. Pa. Mar. 28, 2019) (finding, in case against manager at Wal-Mart store, that allegations of failure to adequately train, monitor, and supervise employees could colorably rise to the level of misfeasance, and declining to find fraudulent joinder); Waas v. Cargill Solutions Corp., No. 17-838, 2018 WL 521588, at *3 (M.D. Pa. Jan. 23, 2018) (declining to find fraudulent joinder of supervisor of business in whose parking lot plaintiff fell; complaint alleged that the alleged failures to maintain the parking lot and/or premises fell within the scope of the supervisor's employment); Gaynor v. Marriott Hotel Servs., Inc., No. 13-3607, 2013 WL 4079652, at *3–4 (E.D. Pa. Aug. 13, 2013) ("[w]hile [the defendant hotel] is correct that the Complaint never explicitly alleges that [the employee] 'personally participated' in the negligence alleged, we are unable to conclude that the claims against him are 'wholly insubstantial and frivolous,' because we find that the Complaint's allegations to carry with them reasonable inferences of personal participation."); Lopez, 2008 WL 2856393, at *3 (finding that allegations that defendant was a store manager during fall and that plaintiff's injury may have been caused by a breach of store manager's duty of care—even absent specific allegations of misfeasance—were sufficient to avoid determination fraudulent joinder, even though complaint may not survive motion to dismiss); Beck v. Alberton's, Inc., No. 05-5064, 2005 WL 3111782, at *4 (E.D. Pa. Nov. 21, 2005) (following removal of the plaintiffs' negligence action by the defendant store in a which the slip-and-fall occurred, the district court granted a motion to remand because the "[d]efendants failed to sustain their heavy burden" of demonstrating that plaintiffs fraudulently joined the diverse store manager, even if the manager was not working on the date of the incident); Wilson v. Acme Mkts., Inc., No. 05-1586, 2005 WL 1201000, at *1 (E.D. Pa. May 18, 2005) (granting motion to remand a slip-and-fall negligence action filed against a store and its non-diverse manager because the "complaint undeniably allege[d] potentially valid claims against the individual defendant," and thus the defendants had not proved that the store manager was fraudulently joined to avoid diversity jurisdiction").

In support of their claims of fraudulent joinder, Defendants rely on three cases from this Court. See Aldorasi v. Crossroads Hospitality & Mgmt. Co., LLC, 344 F. Supp. 3d 814, 823 (E.D. Pa. 2018) (dismissing claims against a hotel's general manager and director of engineering for damages caused by falling building material just outside hotel's exit, finding that allegations of failure to warn, failure to train/instruct employees, failure to develop safety policies, and failure to maintain the premises "suggest only nonfeasance and are therefore insufficient to state a colorable negligence claim . . . under the participation theory"); Kane v. Wal-Mart Stores East, LP, No. 18-5285, 2018 WL 6840154, at *5 (E.D. Pa. Dec. 31, 2018) (dismissing, in a slip-and-fall case, negligence claims against store manager for failure to train and supervise employees because "absent allegations or evidence of knowing a repeated risk of liquid on the floor in a certain spot in a retail store, we cannot find the absence of training in instantaneously cleaning up a slip and fall is misfeasance"); Jackson v. Burlington Coat Factory, No. 17-2459, 2017 WL 3534983, at *3–4 (E.D. Pa. Aug. 17, 2017) (holding a negligence claim against a store manager was not colorable where the complaint alleged the manager was responsible for the store's conditions and had actual or constructive knowledge of the broken escalator on which plaintiff was injured, but faulted the manager only for actions he failed or omitted to take such as failing to inspect, make repairs, warn, or rope off the escalator).

These cases appear to have relied on a Rule 12(b)(6) pleading standard as opposed to a fraudulent joinder standard. Moreover, two of these cases were ultimately remanded to state court upon the recognition that a negligence claim against a store manager is in fact colorable. In Aldorasi, for example, the court—via the same order which granted the motion to dismiss—permitted the filing of an amended complaint which added additional allegations regarding the individual defendants' alleged misfeasance. The court then remanded the case to state court. Aldorasi, 344 F. Supp. 3d at 828. Similarly, in Kane, the court permitted plaintiff to file an amended complaint, which added allegations of improper training and supervising employees and improper implementation and

7

enforcement of safety rules. The court then remanded the case, remarking "[u]nlike his original complaint . . . [plaintiff] now pleads barely enough in his amended Complaint under a federal pleading standard to create questions of fact as to [the store manager's] preexisting awareness of the puddle before the incident when he was in the store." (Order, Kane v. Wal-Mart, Civ. A. No. 18-5285, Jan. 23, 2019.)

In light of the exacting standards for fraudulent joinder, I cannot find that the negligence claim against Defendant Breslin is a "clear legal impossibility" or so "wholly insubstantial and frivolous" such that Mr. Breslin's joinder in this case could be deemed fraudulent. Aside from allegations of failure to train employees, institute safety policies, and investigate allegations of employees, the Complaint also asserts that Breslin "affirmatively acted" (a) in the training and oversight of BJ's Wholesale Club employees, (b) to create a hazardous condition, and (c) to place Plaintiff in harm's way. (Compl. ¶¶ 19–22.) Assuming the truth of the allegations in the Complaint, as I must, such assertions "carry with them reasonable inferences of personal participation." Gaynor, 2013 WL 4079652, at *4; see also Ramos v. Wal-Mart Stores, 202 F. Supp. 3d 457, 463–64 (E.D. Pa. 2016) (interpreting allegation that defendants "are directly negligent for their failures to adequately train the Joe Doe Walmart Cashier" as an allegation of misfeasance rather than nonfeasance). Thus, there remains "a possibility" that a state court would find that the Complaint's allegations against Mr. Breslin state a plausible claim for relief.

Although Defendants urge me to consider Mr. Breslin's affidavit,[2] which states that he was not working on the day of the incident, the fraudulent joinder analysis requires that I "focus on the plaintiff's complaint at the time the petition for removal was filed" and "assume as true all factual allegations of the complaint." Batoff, 977 F.3d at 851–52. Mr. Breslin's affidavit was not produced until the Notice of Removal was filed and, as such, cannot be considered for purposes of determining

---

[2] (See Notice of Removal, Ex. E, ¶ 5.)

whether the Complaint pled a colorable claim. In any event, the affidavit does not completely separate Breslin from the negligence allegations since, according to those allegations, Breslin was responsible for safety and training and could have improperly performed those duties regardless of his presence at the store on the day of the incident. See Gaynor, 2013 WL 4079652, at *5 (declining to consider affidavit of hotel manager where it did not "completely divorce" the challenged defendant from the allegations in the complaint).

For all of the foregoing reasons, I decline to find that the claim against Defendant Breslin is so wholly insubstantial or frivolous as to rise to the level of fraudulent joinder. Accordingly, because I do not have jurisdiction, I cannot consider Defendants' Motion to Dismiss.

### B. Whether Plaintiff Has No Real Intention in Good Faith to Prosecute the Action Against Defendant Breslin

Alternatively, Defendants allege that Plaintiff subjectively does not have any real intention in good faith to prosecute an action against or seek a joint judgment from Breslin.

The Third Circuit has held that district courts may look beyond the pleadings "to identify indicia of fraudulent joinder." Briscoe, 448 F.3d at 218. In certain cases, a court may "pierce the pleadings" in order to determine whether Plaintiff exhibited a subjective intent to prosecute the action against the non-diverse defendant. Weaver v. Conrail, Inc. et al., No. 09–5592, 2010 WL 2773382, at *6 (E.D. Pa. July 13, 2010). In doing so, the Third Circuit has cautioned that the "district court must not step from a threshold jurisdictional issue into a decision on the merits." Briscoe, 448 F.3d at 219. (internal citation and quotation marks omitted). The fact that the plaintiff's motive for joining a defendant is to defeat diversity jurisdiction is not considered indicative of fraudulent joinder. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 31 (3d Cir. 1985).

While the standard for evaluating whether Plaintiff has a good faith intention to pursue his claims against Breslin is somewhat amorphous, several analogous cases provide guidance regarding its application.

In Gibboni v. Hyatt Corp., No. 10-2629, 2011 WL 1045047 (E.D. Pa. Mar. 22, 2011), the plaintiff slipped and fell in his hotel room. Id. at *1. Along with the Hyatt Hotel, the plaintiff sued his wife, Bernadette Gibboni, for "obscur[ing] his view of the slippery condition" and "fail[ing] to alert him to the dangerous condition." Id. at *1. Defendants alleged that Gibboni was fraudulently joined to defeat diversity. Id. at *2. After finding that the plaintiff had a colorable claim of negligence against Gibboni, the court addressed the Hyatt defendants' assertion that the plaintiff had not shown a real intention to prosecute the claim against her. Id. at *3–4. The defendants set forth a number of facts in an attempt to establish that Gibboni was not being treated like a defendant, including: (a) Gibboni was the wife of the plaintiff and was actively involved in seeking and hiring the plaintiff's counsel; (b) she was present at meetings between the plaintiff and his attorneys even after she was sued; (c) Gibboni had no assets separate from plaintiff; (d) Gibboni failed to answer the complaint for eleven months, yet the plaintiff never sought a default judgment; (e) Gibboni was not properly served with various pleadings and correspondence for the first year of litigation; and (f) the plaintiff did not serve any written discovery requests on Gibboni. Id. at *5.

Despite these facts, the court was not persuaded that Hyatt had met the heavy burden of persuasion to show the plaintiff's lack of a good faith intention to prosecute the case against Gibboni. Id. The court concluded that "the fact that Plaintiff believes [Gibboni] to be at fault, named her as a defendant and is pursuing an award against her under insurance policy all show a real intention to prosecute the case against her." Id. Resolving all doubts in favor of remand, the court declined to conclude that the plaintiff had no real intent to prosecute the action against Gibboni.

Likewise, in Lopez v. Home Depot, Inc., No. 08-1020, 2008 WL 2856393 (E.D. Pa. July 22, 2008), the plaintiffs brought a negligence claim against a Home Depot store and its non-diverse store manager based on an injury one of the plaintiffs sustained while in the store. Id. at *1. The defendants argued that plaintiffs had "no evidence, or reason to believe [the manager], individually, caused or

10

contributed to the alleged accident." Id. at *4.  The court rejected this argument finding that the fact that this defendant was a manager at the Home Depot store where the injury occurred "provide[d] a reasonable basis for plaintiffs to suppose that [the manager] owed a duty of care to the plaintiffs, and that [plaintiffs'] injury may have been caused by a breach of this duty." Id. at *4.  The court also found no indicia of fraudulent joinder resulting from plaintiffs' limited amount of discovery directed to the store manager. Id. at *5.

Finally, in Gaynor v. Marriott Hotel Servs., Inc., No. 13-3607, 2013 WL 4079652, at *6 (E.D. Pa. Aug. 13, 2013), the plaintiff fell on a sidewalk adjacent to the Marriott Residence Inn in Philadelphia and commenced a state court action, by way of a writ of summons, alleging failure to maintain, repair, and/or warn about the unsafe sidewalk. Id. at *1.  The plaintiff sought pre-complaint discovery, during which she inquired as to the name and address of the hotel's general manager, and specifically requested the state in which the manager resided. Id.  The plaintiff then filed her complaint naming both the hotel and the general manager. Id.  The defendants argued that the plaintiff did not have a good faith intention to prosecute the action against the manager because: (a) if the plaintiff truly intended to prosecute her claims against the manager, she would have included him, even if only by title, in her writ of summons, and (b) the pre-complaint discovery specifically sought the state in which the manager resided, even after defense counsel specifically advised her that she could contact the manager through defense counsel. Id. at *6.  The court found that it could "discern no lack of good faith in Plaintiff's actions." Id.  It noted that the plaintiff had "demonstrated her actual intention to prosecute this action against [the manager] by serving him with the Complaint, on May 31, 2013, by handing a copy of the Complaint to the Human Resource Manager at 1201 Market Street." Id.

Guided by this jurisprudence, I will consider Defendants' arguments and evidence allegedly reflecting Plaintiff's lack of good faith intention to prosecute the action against Defendant Breslin: [3]

- Defendant Breslin was not working at the BJ's store on the date of the alleged incident.

- No pre-suit discovery was served to BJ's regarding Mr. Breslin.

- No discovery was served on Mr. Breslin in the twenty-three days between when the suit was filed in state court on June 7, 2019, and when it was removed to federal court on July 10, 2019.

- No discovery was served on Mr. Breslin since the case was removed to federal court on July 10, 2019.

- Plaintiff has noticed the depositions of several BJ's representatives, but has not yet noticed Mr. Breslin's deposition.

- Plaintiff noticed the deposition of a "Corporate Designee" most knowledgeable with respect to the "supervision and management" of the BJ's Club where the accident occurred.

- To date, Plaintiff has not served Breslin with a deposition notice, discovery, or request for admissions.

I do not find that these facts meet Defendants' heavy burden of establishing that Plaintiff lacks a good faith intention to proceed against Breslin.[4] Plaintiff filed this case in state court against both

---

[3] Defendants argue that Plaintiff's opposition does not "aver, set forth anywhere, make any arguments or submit any evidence to support the action against Defendant Breslin." Based on that, the BJ's Defendants ask me to consider their argument under the second prong of Boyer to be "unopposed, and granted." (Defs.' Reply Br. 3.)

Defendants' argument is mistaken on two levels. First, Plaintiff has no burden to come forward with evidence showing her intent to pursue an action against Defendant Breslin. Plaintiff has pled a cause of action against Breslin in the Complaint, meaning that Defendants bear the burden of producing evidence that negates the presumed good faith intent behind that cause of action. See Lopez, 2008 WL 2856393, at *4. Second, as noted above, the issue of fraudulent joinder implicates this Court's independent duty to consider whether subject-matter jurisdiction exists here. A motion to find fraudulent joinder cannot simply be granted as unopposed.

[4] In support of their position, Defendants cite to In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation, 257 F. Supp. 3d 717 (E.D. Pa. 2017). In that case, Plaintiffs brought suit against Pfizer, Inc. and McKesson, Inc. alleging various state law negligence-type claims as a result of injuries received by taking the drug Zoloft. Id. at 718. Defendants argued that McKesson was fraudulently joined to defeat diversity. Although the court found that the claim against McKesson was colorable, it determined that the history of the general Zoloft litigation demonstrated that these

BJ's and Breslin. The Complaint sets forth specific allegations about Breslin's actions that purportedly gave rise to his liability. Following removal, Defendants submitted a letter, in support of a proposed Rule 12(b)(6) Motion, positing that, because Defendant Breslin was not working at the BJ's store on the date of the incident, he was not subject to any cognizable claim and had been fraudulently joined to defeat diversity. Plaintiff affirmatively opposed the proposed motion. On July 30, 2019, I held a telephone conference with the parties, at which time I discussed the relevant Pennsylvania law, identified several analogous cases, and asked that Plaintiff's counsel determine whether this law required him to dismiss the claims against Mr. Breslin. By way of an August 12, 2019 letter, Plaintiff's counsel re-emphasized that, upon review of the identified cases, he remained confident that there was a sustainable, independent claim against Defendant Breslin, and that Plaintiff intended to pursue that claim. Thereafter, I directed the Defendants to file their motion to dismiss.

While Plaintiff may not have yet served any discovery on Breslin, I note that his status in the case has remained tenuous in light of the pending motion, meaning that discovery on Breslin is not necessarily proper at this time. Moreover, this matter has yet to proceed to a Rule 16 scheduling conference and, as such, a formal discovery period has not even begun. Finally, Plaintiff's request for a Rule 30(b)(6) deposition of a corporate designee knowledgeable with respect to the "supervision and management" of the BJ's where the accident occurred —as opposed to simply noticing Breslin's

---

plaintiffs had no intention to pursue their claims against McKesson. Id. at 720. The court noted that it had "been made aware of no instance in which any of the numerous Zoloft plaintiffs have propounded meaningful discovery on McKesson in either state or federal court, even though some cases have gone to trial." Id. This failure to seek discovery included other cases brought by Plaintiffs' counsel. Id. Given that history, the court found that "[t]he lack of discovery requests directed towards McKesson casts doubt on Plaintiffs' intent to pursue claims against McKesson." Id.

  Zoloft is inapposite here. In Zoloft, the court recognized that that plaintiff's generalized complaint alleged a "vague but plausible causal chain of events that could expose McKesson to liability." Id. However, the lengthy history of the other Zoloft cases, including others brought by the same counsel, showed an absence of good faith intent to pursue a claim against McKesson. By contrast here, there is no such history to clearly indicate bad faith on the part of Plaintiff. Indeed, at this juncture, Plaintiff has consistently demonstrated an intent to pursue a claim against Breslin.

deposition—does little to undermine Plaintiff's intent to recover damages against Breslin for negligent supervision and training.

In short, I cannot clearly discern a lack of good faith in Plaintiff's actions. As removal statutes are to be strictly construed against removal and all doubts are to be resolved in favor of remand, I cannot find that Breslin was fraudulently joined.

## IV. CONCLUSION

In light of the foregoing, I will deny Defendants' Motion to Dismiss and/or for a finding of fraudulent joinder. As complete diversity does not exist among the parties, I will remand the case to the Court of Common Pleas for Philadelphia County.

An appropriate Order follows.